### GLEN COVE MANUF'G CO. *v.* SUTRO.

(*Supreme Court, General Term, First Department. July 9, 1889.*)

PRACTICE IN CIVIL CASES—EXAMINATION OF DEFENDANT BEFORE TRIAL.

In a suit to recover for slanderous words spoken concerning plaintiff's business, an affidavit, presented to obtain an order for the examination of defendant before trial, recited that plaintiff's information was not sufficient to ascertain the extent of defendant's statements, the persons to whom made, nor the extent of the damage caused, and alleged that plaintiff could not prepare for trial, nor draw his complaint, without such examination. *Held* that, even if such examination is allowed in such a case, the application was properly refused, the object of the examination being evidently a "fishing expedition."

Appeal from special term, New York county.

The Glen Cove Manufacturing Company sued Leopold Sutro for slander, and appeals from an order denying motion for examination of defendant before trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Francis Forbes,* for appellant. *Benno Loewy,* for respondent.

BRADY, J. In the affidavit which was presented to obtain the order to show cause why the defendant should not be examined before trial it is stated that this action was brought to recover damages for defamatory and slanderous words spoken by the defendant concerning the plaintiff in its business; and the affidavit further contained the following: "Plaintiff's information, however, is of such a nature as to render it impossible to ascertain from it the extent of defendant's statements, and the persons to whom or in whose hearing they were made, or the amount of damage caused by said statements as aforesaid, and that plaintiff cannot prepare for trial without an examination of defendant before trial, and cannot with any degree of definiteness or precision frame a complaint herein." This characterizes the application at

once as one which has been properly designated a "fishing bill," by which the plaintiff expects to procure from the defendant, if indeed he have made any slanderous observations, a statement of them in detail. The provisions of the Code were never designed for any such purpose. The object of allowing an examination of the adverse party is for the purpose of ascertaining facts and circumstances either within the knowledge of the parties to the subject of the action and about which there should be no controversy, or which are necessarily within the knowledge of the defendant, and essential to the maintenance of the action as existing and as alleged. In other words, they relate to a cause of action definite, understood, and declared, which, to some extent at least, the plaintiff can establish by competent evidence. If this statement of the intention of the legislature be incorrect, nevertheless the application itself seems to be deficient in essential particulars. The action, it may be observed here, is one which can be maintained only by proof of special damage, the words, for aught that appears, not being actionable *per se.* It is alleged, however, in addition to what has already been stated, that the defendant, in his business as a dealer in glucose, has disseminated by word of mouth untruthful and injurious statements among the trade in the city of London regarding plaintiff's manufactured glucose; and that such statements have been made to numerous parties; and that the injury from them has been very widespread, and of such a nature as to almost destroy the sale of plaintiff's article on the London market; and that the affiant has received information from the plaintiff's agent and other residents in London to the effect stated; but that it is impossible for the plaintiff to obtain any adequate degree of knowledge or information concerning the number of such statements that have been made, or the parties to whom they have been made, without an examination of the defendant herein.

It will be observed that in this statement there is no allegation that the names of all the informants are unknown, who, it appears, are numerous; and the testimony of some of whom, if it should be as suggested, would be quite sufficient to establish the details of the alleged slanderous words, and their publication or actionable utterance. And there is no allegation that all the parties to whom the injurious statements were made are unknown. The charge in regard to these features is that it is impossible to obtain any adequate degree of information as to them, and the suggestion arising from this method is that the plaintiff is dealing with a phantom,—a rumor, which he hopes to convert into a reality by evidence to be obtained from the defendant. In other words, he hopes by successful experiment to create a cause of action which is vague and indistinct, resting upon information without substance and belief, without tangible foundation. This seems to present all the elements of a "fishing expedition." It is a visit to a supposed enemy's camp in the hope of finding something with which to conquer. The necessity which is the foundation of an application like this must be substantial, and must rest upon a well-defined and *prima facie* cause of action; not a mere speculation, but an actual existing cause of action, sufficiently presented at least as to warrant the presumption of its reality. Besides that, in *Williams* v. *Folsom,* decided in the department, and to be found reported in 5 N. Y. Supp. 211, it was declared that a party making an application for the examination of his adversary before trial should show by the papers upon which the order is founded that there is some good reason for directing the examination to be had before, rather than at, the trial. And reference in the opinion then delivered was made to the case of *Jenkins* v. *Putnam,* 106 N. Y. 272, 12 N. E. Rep. 613, in which the court stated that the affidavit upon which such an order should rest must disclose the nature of the action, set forth that the testimony of the parties is material and necessary, and that the judge must be able to see from the facts stated that the testimony is material and necessary. If from the nature of the action and the other facts disclosed he can see that

the examination is not necessary for the party seeking it, then it cannot be supposed it was the legislative intent that he should be obliged, nevertheless, to make the order. And the suggestion is made in that case, as here, that an application for the examination of a plaintiff or a defendant would be dismissed as a "fishing bill" if the court discovered that the examination was not necessary to enable the applicant to establish his case or make his defense. And it was also held in that case that granting the order was, under all the circumstances disclosed, and under all the provisions of the Code, discretionary. Such was the view also expressed in *Williams* v. *Folsom, supra*. The learned justice in the court below refused to grant the order upon the ground of the character of the action, citing two cases, namely, *De Leon* v. *De Lima*, 66 How. Pr. 287, and *Bailey* v. *Dean*, 5 Barb. 297, in which it was held that such an order in a case like this should not be granted. It is not considered, necessary now to determine the question whether, under the provisions of the Code, the defendant in an action of this kind may not be examined. It is sufficient that it appears from the papers that the application is devoid of the necessary elements to invoke the power of the court in the exercise of its discretion. For these reasons the order appealed from should be affirmed, with $10 costs and disbursements. All concur.